**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
DIALLO MIKA,                          :
                                      :  Civil Action No. 09-1991 (JAP)
            Petitioner,               :
                                      :
      v.                              :      **O P I N I O N**
                                      :
ERIC HOLDER, et al.,                  :
                                      :
            Respondents.              :
_____:

**APPEARANCES**:

    DIALLO MIKA, Petitioner, <u>Pro</u> <u>Se</u>
    A# 78 829 806
    Middlesex County Adult Correction Center
    MC# 104639
    P.O. Box 266
    New Brunswick, New Jersey 08903

    CHRISTOPHER J. CHRISTIE, United States Attorney
    PETER G. O'MALLEY, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**PISANO, District Judge**

    Petitioner, Dialla Mika ("Mika"), an immigration detainee presently detained at the Monmouth County Jail in Freehold, New Jersey, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention as unconstitutional under <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001). Mika names Eric Holder, United States Attorney General; Janet Naplitano, Secretary of the Department of Homeland Security

("DHS");[1] John Tsoukaris, Field Office Director; and William Fraser, Warden of the Monmouth County Jail, as party respondents (hereinafter referred to as "the Government") in this action.

On May 19, 2009 and May 20, 2009, the Government submitted a response and amended response to the petition, together with the relevant administrative record. This Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court will deny the petition for lack of merit.

## I.   BACKGROUND

Petitioner Mika states that he is a forty-five year-old man, born on January 1, 1965. He is a native and citizen of Mauritania. Mika states that he first entered the United States in or about the year 1999 or 2000, with a visa. He then filed for asylum. An Immigration Judge ("IJ") denied Mika's request for asylum and ordered that he be removed. The Board of Immigration Appeals ("BIA") affirmed and Mika's Order of Removal became final on February 7, 2008.

Mika married a lawful permanent resident ("LPR"), residing in the United States in or about 2007 or 2008. He and his wife

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Bureau of Immigration and Customs Enforcement ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

had their first child born in the United States on March 12, 2008.  Mika claims that he has never been convicted of any criminal acts.

Mika alleges that he has been detained for more than six months after the 90-day removal period concluded because the DHS' Immigration and Customs Enforcement ("ICE") has been unable to obtain travel documents necessary to deport him to Mauritania.

The Government contends that Mika has not cooperated in effecting his removal, which non-cooperation serves to toll the removal period.  See 8 U.S.C. § 1231(a)(1)(C).  The record shows that on November 17, 2008, Mika was informed as to an upcoming custody review to take place on December 24, 2008.  (Declaration of Peter G. O'Malley ("O'Malley Decl."), at Exhibit A).  That same date of November 17, 2008, the ICE issued to Mika a form Warning for Failure to Depart, which advised Mika of his obligations to assist the ICE in effecting his removal from the United States, namely, by applying for travel and other necessary documents.  (O'Malley Decl., at Ex. B).

Similar warnings were again issued to Mika by the ICE on December 19, 2008; January 6, 2009; February 10, 2009; March 3, 2009; and April 9, 2009.  (O'Malley Decl., at Exs. D, F, G and H).  On January 6, 2009, the ICE issued to Mika a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g).  This Notice informed Mika that his custody had been reviewed and that he

would not be released under supervision pending his removal because Mika had failed to cooperate in obtaining documents needed for his removal. The Notice also advised Mika that he remained obligated to assist in the removal process, and that his failure to do so has resulted in the extension of the removal period in his case. See 8 U.S.C. § 1231(a)(1)(C). Specifically, the Notice remarked that Mika had refused to speak with the representative of the Mauritanian Consulate when a telephone interview had been arranged. (O'Malley Decl., at Ex. E). To date, no travel document has been obtained.

   This Court notes that Mika has been detained at three different facilities since November 2008. Namely, it appears that Mika was held at the Perry County Correction Center in Uniontown, Alabama at the time he received the November 17, 2008 Notice of Custody Review. Mika was then detained at the Varick County Jail in New York on or about December 19, 2008, when he received his second Warning for Failure to Depart. It appears that Mika remained at the Varick County Jail through March 2009, but was then transferred to the Monmouth County Jail sometime before his receipt of the April 9, 2009 Warning for Failure to Depart.

## II. ANALYSIS

### A. Jurisdiction

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, this Court has subject matter jurisdiction over this petition because petitioner was detained within its jurisdiction at the time he filed his petition, and because petitioner asserts that his indefinite detention is not statutorily authorized and is constitutionally impermissible pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001).

### B. Standard of Review

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

C. <u>Relevant Statutes</u>

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001); <u>Clark v. Martinez</u>, 543 U.S. 371 (2005).

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to

rebut that showing.  Zadvydas, 533 U.S. at 699-701.  See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks."  533 U.S. at 701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  Federal courts have recognized that "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal.  The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable

7

future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003)(cited with approval in U.S. ex rel. Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3d Cir. 2003).

D.   Petitioner Has Not Cooperated

In this case, Mika's final order of removal was entered on February 7, 2008, and he has been detained since that date, far longer than the presumptive valid period of six months set forth by the Supreme Court. See Zadvydas, 533 U.S. at 701. Since the presumptively valid period of detention has expired, Mika may be released upon a showing that there is no significant likelihood of removal in the reasonably foreseeable future. As the period of post-removal detention grows, what counts as the "reasonably foreseeable future" conversely shrinks. See id.

Mika claims removal is not significantly likely in the reasonably foreseeable future because, despite his cooperation, ICE has been unable to remove him. The Government argues that Mika's detention is lawful under 8 U.S.C. § 1231, as he remains in detention because of his own failure to cooperate with the removal proceedings.

Aliens awaiting deportation pursuant to 8 U.S.C. § 1231 may remain detained for an extended period of time if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an

8

order of removal."  8 U.S.C. § 1231(a)(1)(C).  The decision in Zadvydas does not prevent an alien who does not provide adequate or accurate information to DHS from being detained beyond the presumptively valid six month period.  See Chun Kwong Ching v. B.I.C.E./D.H.S., 2007 WL 2363836 (D.N.J. August 16, 2007)(citing Pelich v. INS, 329 F.3d 1057, 1059 (9th Cir. 2003); Joseph v. Chertoff, 2006 WL 1722593 (D.N.J. June 19, 2006)("Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal").  See also United States ex Rel Kovalev v. Ashcroft, 71 Fed. Appx. 919, 924 (3rd Cir.2003); Camara v. Gonzalez, 2007 WL 4322949 at *4 (D.N.J. December 2, 2007); Qing Di Wong v. Carbone, 2005 WL 2656677 (D.N.J. October 17, 2005).

   This Court finds that Mika has failed to meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.  Although Mika has been detained for more than one year since his order of removal became final on February 7, 2008, Mika has failed to fully cooperate with the ICE to effect his removal.  The ICE has notified Mika on many occasions about his obligation to provide the necessary information and cooperation to obtain travel documents.  In fact, the ICE notified Mika about his refusal to cooperate with the scheduled telephone interview with the Mauritanian Consulate to obtain travel documents.

Consequently, the record shows that Mika is an unwilling participant in the removal proceedings.  Zadvydas does not save an alien who does not provide adequate documentation and information, because an alien cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future "if the detainee controls the clock."  Joseph v. Chertoff, 2006 WL 1722593 (citing Pelich v. INS, 329 F.3d at 1060).

Mika's removal from the United States is likely in the reasonably foreseeable future if he provides DHS/ICE with the requested documentation and/or information requested by the Mauritanian consulate.  Without efforts by Mika to assist in his removal and provide any requested information, this Court finds that removal is significantly likely in the reasonably foreseeable future and that Mika's continued detention is lawful under § 241(a)(1)(C) of the INA.  As such, the petition for a writ of habeas corpus must be denied at this time.[2]

---

[2] Although the record does confirm that Mika has not been entirely cooperative with the efforts to remove him, this Court feels compelled to remark that the monthly notices to Mika from the ICE appear to be more a matter of routine than substantively supported, with the notable exception of Mika's singular refusal to participate in the telephone interview with the Mauritanian consulate on January 6, 2009.  Petitioner has been moved to different detention centers in different states on three occasions within a six month period, which may be a significant factor impeding Mika from obtaining documents or providing information that is requested from him.  Accordingly, this Court will deny the petition without prejudice at this time.

## **CONCLUSION**

For the reasons set forth above, the petition for habeas relief under 28 U.S.C. § 2241 will be denied without prejudice for lack of merit at this time.  An appropriate order follows.


/s/Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: July 16, 2009